**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | |
|---|---|
| ALLIANZ GLOBAL RISKS US INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 1:18-cv-2321 ) |
| TECHNICOLOR CREATIVE SERVICES USA, INC. | ) ) |
| Defendant. | ) |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, ALLIANZ GLOBAL RISKS US INSURANCE COMPANY (hereinafter "Allianz"), by and through its attorneys, Karbal, Cohen, Economou, Silk & Dunne LLC, for its Complaint for Declaratory Judgment against Defendant, TECHNICOLOR CREATIVE SERVICES USA, INC. (hereinafter "Technicolor"), pursuant to Federal Rule of Civil Procedure 57, hereby states:

## NATURE OF ACTION

1.     This is an insurance coverage action in which Allianz seeks a declaration of the parties' rights and obligations under insurance policies issued by Allianz to Technicolor. Technicolor seeks coverage for defense costs and a judgment entered in the lawsuit entitled *Reynaud v. Ogletree Deakins, Nash, Smoak & Stewart, P.C., et al.*, Case No. BC 632972, Superior Court for the State of California, County of Los Angeles ("Underlying Lawsuit") filed on September 6, 2016.

2.     An actual and justiciable controversy exists between the parties regarding whether there is coverage for the Underlying Lawsuit under Allianz's insurance policies issued to

Technicolor.  Consequently, Allianz is seeking a declaration that it does not owe Technicolor any coverage obligations under these insurance policies with respect to the Underlying Lawsuit.

## PARTIES

3.      Plaintiff, Allianz Global Risks US Insurance Company is an insurance company organized and existing under the laws of the State of Illinois with its principal place of business located in Illinois.

4.      Defendant Technicolor Creative Services USA, Inc. is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in California.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) as Allianz and Technicolor are citizens of different States and the amount in controversy is greater than $75,000.

6.      This declaratory judgment action is brought pursuant to Federal Rule of Civil Procedure 57.

7.      An actual and justiciable controversy exists been Allianz and Technicolor within the meaning of 28 U.S.C. § 2201 regarding the scope and extent of insurance coverage, if any, provided under the policies issued by Allianz to Technicolor as more particularly described below.

8.      Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(b)(2), in that a substantial part of the events giving rise to this action took place in this District.

## BACKGROUND INFORMATION

### The Underlying Lawsuit

9.      This declaratory judgment action addresses insurance coverage for a lawsuit brought by Michael and Fiona Reynaud (hereinafter, "Michael," "Fiona," or the "Reynauds") alleging a single cause of action against Michael's employer, Technicolor, for negligence in its undertaking to serve as a sponsor for the Reynauds' immigration matters, in giving assurance that the process of obtaining a green card was moving forward in a timely manner, and in keeping the Reynauds fully informed of their immigration status and the process undertaken to obtain permanent resident status.

10.     The Reynauds also sued their counsel, Ogletree, Deakins, Nash, Smoak & Stewart, P.C. ("Ogletree"), for legal malpractice.

11.     A copy of the Complaint filed in the Underlying Lawsuit is attached hereto as Exhibit A.

12.     Michael is a British national and was first employed by Technicolor on or about July 2007.  At that time, Michael was in the United States on an H1 visa.  Michael worked continuously for Technicolor until June 2016.

13.     In October 2014, Technicolor advised Michael of its desire to sponsor him for his Green Card.  A copy of the October 14, 2014 e-mail is attached hereto as Exhibit B.

14.     Michael further alleged that defendant Ogletree, Deakins, Nash, Smoak & Stewart, P.C. ("Ogletree") and Technicolor advised, assisted, and were in control of his efforts to adjust his immigration status in the United States.

15.     Technicolor was aware of the duration and expiration dates of Michael's visa and related visas for Fiona and their minor daughter.

3

16.     Ogletree and Technicolor advised and instructed the Reynauds regarding their immigration status, the process of obtaining a Green Card for both, and maintained control over the process.

17.     Technicolor represented to the Reynauds that it was filing necessary paperwork with the United States Department of Labor, and immigration authorities, in furtherance of the Green Card application and related family visas.  Technicolor allegedly assured the Reynauds that it was processing necessary paperwork with the government.

18.     On or about March 8, 2016, Michael was notified that his H-1B immigration status would expire May 24, 2016, and he and his family must exit the United States at that time.  Michael allegedly discovered that Technicolor and Ogletree had not submitted the necessary documentation to the Department of Labor to begin the Green Card process, and no measure had been taken to extend his stay in the United States legally.

19.     The Reynauds had to pack up 11 years of life, arrange for the sale of their condominium, and ship their personal belongings to the United Kingdom.

20.     The Reynauds allegedly had no residence or employment in place in the United Kingdom.

21.     The Reynauds claimed to have lost income and incurred significant economic losses, including, but not limited to, the cost of selling their condominium, transportation to the United Kingdom, shipment of personal belongings, cost of replacing of those items sold and not shipped, and other incident and sundry expenses.

22.     The Reynauds alleged that they suffered physical, mental, and emotional injuries, pain, distress, suffering, anguish, fright, nervousness, grief, anxiety, worry, shame, mortification,

injured feelings, shock, humiliation, indignity, damage to reputation, aggravation, inconvenience, and other non-economic damages in a sum to be ascertained according to proof.

23.     Before trial, Ogletree settled for $140,000.

24.     On March 8, 2018, after a five day trial, a Jury awarded Michael:

| | | |
|---|---|---|
| a. | Past lost wages and benefits: | $   317,114.00 |
| b. | Future lost wages and benefits: | $   570,000.00 |
| c. | Past loss for mental and emotional suffering: | $ 1,200,000.00 |
| d. | Future loss for mental and emotional suffering: | $   600,000.00 |

25.     The Jury awarded Fiona:

| | | |
|---|---|---|
| a. | Past loss for mental and emotional suffering: | $   300,000.00 |
| b. | Future loss for mental and emotional suffering: | $   200,000.00 |

26.     Pursuant to the Jury's finding of comparative fault, the total economic damages of $887,114.00 was reduced by $44,355.70 to $842,758.30.  Pursuant to California's Code of Civil Procedure § 877, the economic damages were further reduced by the Ogletree settlement to $702,758.30.  Pursuant to the Jury's finding of comparative fault, the noneconomic damages of $2,300,000 were reduced by $115,000 to $2,185,000.

27.     A copy of the Judgment entered in the Underlying Lawsuit is attached hereto as Exhibit C.

28.     The Judgment is currently on appeal accruing post-judgment interest.

**Tender Correspondence**

29.     Technicolor notified its primary employment practices liability insurance ("EPLI") insurer, National Union Fire Insurance Company of Pittsburgh, PA ("National Union") which issued Technicolor a primary EPLI policy with $5 million in limits, of the Underlying Lawsuit on March 22, 2017.

30.     Allianz was notified of the Underlying Lawsuit on February 16, 2018, just 10 days before the commencement of the trial on February 26, 2018 and 17 months after the Underlying Lawsuit was filed.

31.     At the time it notified Allianz, Technicolor had spent over $630,000 defending itself.

32.     By letter dated March 7, 2018, Allianz reserved its rights with respect to a primary commercial general liability policy it issued to Technicolor and requested Technicolor to withdraw its tender.  Technicolor refused to withdraw its tender to Allianz and continued to demand defense and indemnity.

33.     Technicolor provided Allianz with National Union's February 22, 2018 letter accepting Technicolor's defense under a reservation of rights.  A copy of National Union's letter is attached hereto as Exhibit D.

34.     Following the verdict, Technicolor advised Allianz that National Union was denying defense and indemnity, but Technicolor refused to provide National Union's declination letter.

35.     Despite multiple requests, Technicolor continues to refuse to provide Allianz with National Union's declination letter.

36.     By letter dated June 28, 2018, Allianz supplemented its reservation of rights and agreed to defend from the date of the February 16, 2018 tender to Allianz under a reservation of all of its rights and defenses under its commercial general liability primary policy it issued to Technicolor.

37.     Technicolor accepted Allianz's defense under a reservation but demands that Allianz pay for all of Technicolor's defense, including the defense incurred pre-tender.

**The Primary Policy**

38.     Allianz issued to Technicolor Commercial General Liability Policy No. CGL 2006459 effective January 1, 2016 to January 1, 2017 (the "Primary Policy") with a self-insured retention by endorsement of $250,000 for all coverage except the products-completed operations hazard.

39.     The Primary Policy provides the following Insuring Agreement, in relevant part:

**SECTION I – COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.     Insuring Agreement**

a.      We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.  But:

    (1)     The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

    (2)     Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under supplementary Payments – Coverages **A** and **B**.

b.      This insurance applies to "bodily injury" and "property damage" only if:

    (1)     The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

    (2)     The "bodily injury" or "property damage" occurs during the policy period; and

\*     \*     \*

40.     The Primary Policy is subject to the following relevant exclusion:

**2.  Exclusions**

This insurance does not apply to:

**e.  Employer's Liability**

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

\*   \*   \*

41.     The Primary Policy is also subject to the following relevant condition precedent to

coverage:

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

\*   \*   \*

**2.     Duties In The Event Of Occurrence, Offense, Claim or Suit**

a.  You must see to it that we are notified as soon as possible of an "occurrence", offense, claim or "suit" after your agent, corporate insurance manager or an officer of your company becomes aware of such "occurrence", offense, claim or "suit".

The failure in good faith of your agent, corporate insurance manager or an officer of your company to recognize that such "occurrence", offense, claim or "suit" may involve this insurance shall not operate to prejudice your rights under this policy.[1]

To the extent possible, notice should include:

(1) How, when and where the "occurrence" or offense took place;

(2) The names and addresses of any injured persons and witnesses; and

(3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

---

[1]  Modified by endorsement.

    **b.**  If a claim is made or "suit" is brought against any insured, you must

        (1) Immediately record the specifics of the claim or "suit" and the date received; and

        (2) Notify us as soon as practicable.

        You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

    c.  You and any other involved insured must:

        (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit"'

        (2) Authorize us to obtain records and other information;

        (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

        (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

    d.  No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

*   *   *

42.    Condition 2.a. is modified by the **KNOWLEDGE & NOTICE OF OCCURRENCE, OFFENSE, CLAIM OR SUIT** Endorsement which states:

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

UNDER SECTION IV - **COMMERCIAL GENERAL LIABILITY CONDITIONS,** 2. - DUTIES IN THE EVENT OF OCCURRENCE, OFFENSE, CLAIM OR SUIT, PARAGRAPH a. IS AMENDED AS FOLLOWS:

a.  YOU MUST SEE TO IT THAT WE ARE NOTIFIED AS SOON AS POSSIBLE OF AN "OCCURRENCE", OFFENSE, CLAIM OR "SUIT" AFTER YOUR AGENT, CORPORATE INSURANCE MANAGER OR AN OFFICER OF YOUR COMPANY BECOMES AWARE OF SUCH "OCCURRENCE", OFFENSE, CLAIM OR "SUIT".

    THE FAILURE IN GOOD FAITH OF YOUR AGENT, CORPORATE INSURANCE MANAGER OR AN OFFICER OF YOUR COMPANY TO RECOGNIZE THAT SUCH "OCCURRENCE", OFFENSE, CLAIM OR "SUIT" MAY INVOLVE THIS INSURANCE SHALL NOT OPERATE TO PREJUDICE YOUR RIGHTS UNDER THIS POLICY.

TO THE EXTENT POSSIBLE, NOTICE SHOULD INCLUDE:

(1) HOW, WHEN AND WHERE THE "OCCURRENCE" OR OFFENSE TOOK PLACE;

(2) THE NAMES AND ADDRESSES OF ANY INJURED PERSONS AND WITNESSES; AND

(3) THE NATURE AND LOCATIONS OF ANY INJURY OR DAMAGE ARISING OUT OF THE "OCCURRENCE" OR OFFENSE.

\* \* \*

43.   The Primary Policy provides the following relevant definitions:

**SECTION V – DEFINITIONS**

\* \* \*

3.   "Bodily injury" means bodily injury, sickness or disease sustained by a person including death resulting from any of these at any time.

\* \* \*

13.   "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\* \* \*

17.   "Property damage" means:

a.   Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b.   Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

\* \* \*

44.   The Primary Policy contains an Endorsement, form no. AGR-GL 3006 (11-03),

which provides:

**SELF INSURED RETENTION AGREEMENT – APPLICABLE TO ALL LIABILITY EXCEPT PRODUCTS-COMPLETED OPERATIONS HAZARD AND RELATED CONTRACTUAL LIABILITY**

1.   In consideration of the premium charged for this insurance it is agree that the coverage provided by this policy except for "products-completed operations hazard" is excess of a self insured retention of: $250,000 applicable to each occurrence.  This retention per occurrence is not subject to an aggregate.

\*   \*   \*

6. All the terms of this policy, including, but not limited to, those with respect to notice of claim or suit and the company's right to investigate, negotiate and settle any claim apply irrespective of the application of the self insured retention.

\*   \*   \*

45.    Additionally, the Primary Policy contains the **Employment-Related Practices Exclusion** endorsement.  This provides:

A. The following exclusion is added to Paragraph **2.**, **Exclusions** of Section **I – Coverage A – Bodily Injury and Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

(1) A person arising out of any:

    (a) Refusal to employ that person;

    (b) Termination of that person's employment; or

    (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

\*   \*   \*

## The Umbrella Policy

46.    Allianz issued to Technicolor Commercial Umbrella Liability Policy No. ULA 2006460 effective January 1, 2016 to January 1, 2017 (the "Umbrella Policy").

11

47.     The Insuring Agreement of the Umbrella Policy provides, in relevant part:

**SECTION I –COVERAGE**

**A.** We will pay on behalf of the "insured" those sums in excess of the "Retained Limit" that the "insured" becomes legally obligated to pay as damages by reason of liability imposed by law or assumed by the "insured" under an "insured contract" because of "bodily injury", "property damage", "personal injury" or "advertising injury" to which this insurance applies.

However:

**1.**   The amount we will pay for damages is limited as described in Section III - Limits of Insurance; and

\*   \*   \*

**B.** This policy applies to "bodily injury" or "property damage" only if:

**1.**   The "bodily injury" or "property damage" is caused by an "occurrence" that takes place anywhere in the world;

**2.**   The "bodily injury" or "property damage" occurs during the "policy period"; and

\*   \*   \*

**D.** "Bodily injury" or "property damage" which occurs during the "policy period" and was not, prior to the "policy period", known to have occurred by any "insured "listed under Paragraph 2. of the definition of "insured" or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the "policy period".

\*   \*   \*

48.     The Umbrella Policy contains the following relevant definitions:

**D.** "Bodily injury" means bodily injury, sickness, disability or disease sustained by a person, including death resulting from any of these at any time.

"Bodily injury" includes humiliation, shock, mental anguish or other mental injury resulting from "bodily injury".

\*   \*   \*

12

**G.** "Employee" means a person working for you for remuneration. "Employee" includes a Leased Worker, but "employee" does not include a Temporary Worker.

For the purposes of this insurance:

1. A Leased Worker is a person, other than a Temporary Worker, leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business; and

2. A Temporary Worker is a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

\*     \*     \*

**N.** "Occurrence":

1. With respect to "bodily injury" and "property damage", "occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.  All such exposure to substantially the same general conditions shall be considered as arising out of one "occurrence".

\*     \*     \*

**O.** "Other insurance" means a valid and collectible policy of insurance providing coverage for damages covered in whole or in part by this policy.

However, "other insurance" does not include "scheduled underlying insurance" or any policy of insurance specifically purchased to be excess of this policy affording coverage this policy also affords.

\*     \*     \*

**S.** "Property damage" means:

1. Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

2. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

\*     \*     \*

**T.** "Retained limit" means:

1. The total applicable limits of "scheduled underlying insurance" and any applicable "Other Insurance" providing coverage to the "Insured"; or

2. The dollar amount listed in the Declarations as Self Insured Retention, which applies separately to each "occurrence" that results in damages not covered by any "scheduled underlying insurance".

\*   \*   \*

49.     The Umbrella Policy provides the following applicable exclusions:

### SECTION V – EXCLUSIONS

This insurance does not apply to:

\*   \*   \*

**I.   Liability of Employees and Volunteer Workers**

Liability of:

**1.**  Any of your "employees" with respect to "bodily injury" or "personal injury" to:

    **a.**  A co-"employee" while in the course of his or her employment; or

    **b.**  A co-"employee" or any of your "volunteer workers" while performing duties related to the conduct of your business;

\*   \*   \*

This exclusion applies to:

**1.**  "Bodily injury" or "personal injury" to the spouse, child, parent, brother or sister of that "employee" or "volunteer worker" as a consequence of Paragraphs **I.**1. or **I.**2. above; and

**2.**  Any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to the extent that valid "scheduled underlying insurance" for the employee and volunteer workers liability risks described above exists or would have existed but for the exhaustion of applicable limits of insurance.

\*   \*   \*

**R.  Employment-Related Practices**

"Bodily injury" or "personal injury" to:

**1.**  A person arising out of any:

    **a.**  Refusal to employ that person;

    **b.**  Termination of that person's employment; or

    **c.**  Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

14

    **2.**   The spouse, child, parent, brother or sister of that person as a consequence of injury to that person at whom any of the employment-related practices described in Paragraphs a., b., or c. above is directed.

This exclusion applies whether the "insured" may be liable as an employer or in any other capacity, and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

*   *   *

50.    The Umbrella Policy provides the following precedent to coverage:

<strong>SECTION VI – CONDITIONS</strong>
*   *   *

**E.  Duties in the Event of Occurrence, Claim or Suit**

    **1.**   You must see to it that we are notified as soon as practicable of an "occurrence", regardless of the amount, which may result in a claim under this policy. To the extent possible, notice should include:

        **a.**   How, when and where the "occurrence" took place;

        **b.**   The names and addresses of any injured persons and witnesses; and

        **c.**   The nature and location of any injury or damage arising out of the "occurrence".

    **2.**   If a claim is made or "suit" is brought against any "insured" that is reasonably likely to involve this policy, you must:

        **a.**   Record the specifics of the claim or "suit" and the date received; and

        **b.**   See to it that we receive written notice of the claim or "suit" as soon as practicable, including other materials and information in your possession pertinent and relevant to the claim or "suit".

    **3.**   You and any other involved "insured" must:

        **a.**   Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

        **b.**   Authorize us to obtain records and other information;

        **c.**   Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

        **d.**   Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the "insured" because of injury or damage to which this insurance may also apply.

**4.** No "insured" will, except at that "insured's" own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

\* \* \*

**L.  Other Insurance**

If valid and collectible insurance applies to damages that are also covered by this policy, this policy will apply as excess of the "other insurance" and will not contribute with the "other insurance".  However, this provision will not apply if the "other insurance" is specifically written to be excess of this policy.

\* \* \*

## COUNT I
### (Declaratory Judgment – The Primary Policy)
### (Duty to Defend)

51.     Allianz hereby incorporates and re-alleges the allegations in Paragraphs 1 through 50 of this Complaint as if fully set forth herein.

52.     The Primary Policy Insuring Agreement for Coverage A provides that Allianz will pay those sums that the insured becomes legally obligated to pay as damages because, in relevant part, of "property damage" to which this insurance applies.  "Property damage" is defined, in relevant part, as "physical injury to tangible property or loss of use of tangible property that is not physically injured."  The Reynaud Complaint did not allege "property damage" as that term is defined in the Primary Policy.

53.     The Primary Policy Insuring Agreement for Coverage A further provides that Allianz will pay those sums that the insured becomes legally obligated to pay as damages because, in relevant part, of "bodily injury" to which this insurance applies.  "Bodily injury" is defined as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."  The Reynaud Complaint did not allege the Reynauds suffered any bodily injury, sickness, or disease.

54.     The Primary Policy provides that "[n]o Insured will, except at that Insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent."  Technicolor voluntarily made payments to defense counsel and incurred expenses without Allianz's consent.

55.     The Primary Policy also contains a condition precedent to coverage requiring that Technicolor notify Allianz as soon as practicable if a claim is made or "suit" is brought against any insured and immediately send Allianz copies of any demands, notices, summonses, or legal papers received in connection with the claim or "suit."

56.     The Underlying Lawsuit was filed on September 6, 2016.  However, Allianz did not receive notice of the Underlying Lawsuit until a year and a half later on February 16, 2018, ten days before trial commenced.

57.     Because Technicolor failed to satisfy the notice condition precedent to coverage, there is no coverage available to Technicolor under the Primary Policy.

58.     The Primary Policy, per exclusion e. Employer's Liability, excludes from coverage "bodily injury" to an "employee" of the insured or their spouse arising out of and in the course of employment by the insured or performing duties related to the conduct of the insured's business. The Underlying Complaint alleges the Reynauds' injuries arose out of and were suffered in the course of Michael's employment by Technicolor and thus the Reynauds' claims are not covered under the Primary Policy.

59.     The Primary Policy, per the Employment – Related Practices exclusion, excludes from coverage, in relevant part, "bodily injury" to a person arising out of any employment-practices, policies, acts, or omissions.  Further, this exclusion applies to the spouse or that person at whom any of the employment-related practices, policies, acts, or omissions was directed.

60. Because the Underlying Complaint alleged the Reynauds' injuries arose out of Technicolor's employment practices, policies, acts, or omissions to a person and/or his spouse, the Employment-Related Practices exclusion applies to bar coverage under the Primary Policy.

## COUNT II
### (Declaratory Judgment – The Primary Policy)
### (Duty to Indemnify)

61. Allianz hereby incorporates and re-alleges the allegations in Paragraphs 1 through 60 of this Complaint as if fully set forth herein.

62. The Primary Policy Insuring Agreement for Coverage A provides that Allianz will pay those sums that the insured becomes legally obligated to pay as damages because, in relevant part, of "property damage" to which this insurance applies.  "Property damage" is defined, in relevant part, as "physical injury to tangible property or loss of use of tangible property that is not physically injured."  The Judgment awarded against Technicolor is not for "property damage" as that term is defined in the Primary Policy.

63. The Primary Policy Insuring Agreement for Coverage A further provides that Allianz will pay those sums that the insured becomes legally obligated to pay as damages because, in relevant part, of "bodily injury" to which this insurance applies.  "Bodily injury" is defined as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."  The Judgment awarded against Technicolor is not for bodily injury, sickness, or disease.

64. The Primary Policy contains a condition precedent to coverage requiring that Technicolor notify Allianz as soon as practicable if a claim is made or "suit" is brought against any insured and immediately send Allianz copies of any demands, notices, summonses, or legal

papers received in connection with the claim or "suit." The Underlying Lawsuit was filed on September 6, 2016.

65.    Allianz did not receive notice of the Underlying Lawsuit until a year and a half later on February 16, 2018, ten days before trial commenced.  Because Technicolor has failed to satisfy the notice condition precedent to coverage, there is no coverage available to Technicolor under the Primary Policy.

66.    The Primary Policy, per exclusion e. Employer's Liability, excludes from coverage "bodily injury" to an "employee" of the insured or their spouse arising out of and in the course of employment by the insured or performing duties related to the conduct of the insured's business. The Judgment against Technicolor is for the Reynauds' injuries that arose out of and were suffered in the course of Michael's employment by Technicolor and thus the Reynauds' claims are not covered under the Primary Policy.

67.    The Primary Policy, per the Employment–Related Practices exclusion, excludes from coverage "bodily injury" to a person arising out of any, in relevant part, employment-practices, policies, acts, or omissions.  Further, this exclusion applies to the spouse or that person at whom any of the employment-related practices, policies, acts, or omissions was directed.  The Judgment against Technicolor is for the Reynauds' injuries that arose out of Technicolor's employment practices, policies, acts, or omissions to a person and/or his spouse, and this exclusion applies to bar coverage under the Primary Policy.

## COUNT III
### (Declaratory Judgment – The Umbrella Policy)
### (Duty to Indemnify)

68.     Allianz hereby incorporates and re-alleges the allegations in Paragraphs 1 through 67 of this Complaint as if fully set forth herein.

69.     The Umbrella Policy provides that Allianz will pay only those sums in excess of the "Retained Limit."  "Retained Limit" is defined as the total applicable limits of the scheduled underlying insurance and any applicable other insurance providing coverage to Technicolor. Other Insurance is defined in the Umbrella Policy as a valid and collectible policy providing coverage for the damages covered by the Umbrella Policy.

70.     Technicolor has $5 million in primary EPLI coverage, which is Other Insurance.

71.     Technicolor has not exhausted the limits of the scheduled underlying insurance and any applicable other insurance providing coverage to Technicolor and, consequently, the Umbrella Policy is not implicated for coverage by the Underlying Lawsuit.

72.     The Insuring Agreement of the Umbrella Policy provides that Allianz will pay those sums in excess of the "Retained Limit" that the insured becomes legally obligated to pay as damages, in relevant part, because of "property damage" to which the insurance applies.  "Property damage" is defined, in relevant part, as physical injury to tangible property or loss of use of tangible property that is not physically injured.  The judgment awarded against Technicolor is not for "property damage" as that term is defined in the Umbrella Policy.

73.     The Insuring Agreement of the Umbrella Policy provides that Allianz will pay those sums in excess of the "Retained Limit" that the insured becomes legally obligated to pay as damages, in relevant part, because of "bodily injury" to which the insurance applies.  "Bodily injury" is defined as "bodily injury, sickness, or disease sustained by a person, including death

resulting from any of these at any time." The judgment awarded against Technicolor is not for "bodily injury" as that term is defined in the Umbrella Policy.

74.     The Umbrella Policy provides that no insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent. Any voluntarily payments, assumed obligations, or incurred expenses by Technicolor without Allianz's consent are not covered under the Umbrella Policy.

75.     The Umbrella Policy also contains a condition precedent to coverage requiring that Technicolor notify Allianz "as soon as possible of an occurrence, regardless of the amount, which may result in a claim under the policy." Further, if a claim is made or "suit" is brought against Technicolor, it must notify Allianz as soon as practicable and immediately send to Allianz copies of any demands, notices, summonses, or legal papers received in connection with the claim or "suit."

76.     The Underlying Lawsuit was filed on September 6, 2016. However, Allianz did not receive notice until a year and a half later on February 16, 2018, ten days before trial commenced.

77.     Because Technicolor has failed to satisfy the notice condition precedent to coverage, there is no coverage available to Technicolor under the Umbrella Policy.

78.     The Umbrella Policy excludes from coverage the liability of any "employee" with respect to "bodily injury" to a co-"employee" while in the course of his or her employment unless there is coverage under valid scheduled underlying insurance. The exclusion further applies to "bodily injury" to the spouse of that "employee." To the extent that the Underlying Lawsuit involves liability of an "employee" with respect to "bodily injury" to a co-"employee," or his or

her spouse, while in the course of his or her employment, there is no coverage available to Technicolor under the Umbrella Policy.

79.     The Umbrella Policy also excludes from coverage "bodily injury" to a person arising out of any, in relevant part, employment-related practices, policies, acts, or omission. Further, this exclusion applies to the spouse or that person at whom any of the employment-related practices, policies, acts, or omissions was directed.  Because the Underlying Lawsuit involves "bodily injury" arising out of any employment practices, policies, acts, or omissions, this exclusion applies to bar coverage under the Umbrella Policy.

### COUNT IV
**(Declaratory Judgment – The Primary Policy)**
**(Unjust Enrichment – Reimbursement Of Supplemental Payments)**

80.     Allianz hereby incorporates and re-alleges the allegations in Paragraphs 1 through 79 of this Complaint as if fully set forth herein.

81.     By letter dated March 7, 2018, Allianz responded to Technicolor's February 16, 2018 tender of the Underlying Lawsuit with a reservation of rights, including the right to recoup any monies Allianz paid as defense or indemnity.

82.     Technicolor refused to withdraw its tender and continued to demand that Allianz defend and indemnify it.

83.     By letter dated June 28, 2018, Allianz again reiterated its reservation of rights, including the right to recoup any monies Allianz paid as defense or indemnity, and agreed to fund Technicolor's post-tender defense costs upon Technicolor's satisfaction of its $250,000 self-insured retention.

84.     Allianz has no coverage obligation to Technicolor for the Underlying Lawsuit.

85.     Allianz's payments toward Technicolor's defense constitute an unjust benefit to Technicolor and a detriment to Allianz.  Allianz has been damaged as a result of paying funds that should have been paid by Technicolor.

86.     Accordingly, Allianz is entitled to restitution from Technicolor for any and all amounts Allianz pays for Technicolor's defense in the Underlying Lawsuit.

87.     In the event that Technicolor fails or refuses to reimburse those amounts Allianz paid for Technicolor's defense in the Underlying Lawsuit above the self-insured retention, Technicolor's unjust retention of such funds violates principals of justice, equity, and good conscience, and Allianz is entitled to reimbursement of all amounts paid plus interest.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Allianz Global Risks US Insurance Company demands judgment against Defendant Technicolor Creative Services USA, Inc. as follows:

(1)     Determining and declaring that the Primary Policy does not provide a defense for Technicolor for any of the allegations in the Underlying Lawsuit;

(2)     Determining and declaring that the Primary Policy does not provide indemnity for Technicolor for any of the allegations in the Underlying Lawsuit;

(3)     Determining and declaring that the Umbrella Policy does not provide coverage for Technicolor for the Judgment in the Underlying Lawsuit.

(4)     Declaring that Allianz is entitled to reimbursement from Technicolor for any Supplemental Payments, including fees and costs, incurred in connection with the Underlying Lawsuit and entering an order consistent with this declaration in the event the Court finds that Allianz has no obligation to defend Technicolor; and

(5)     For such other and further relief this Court may deem just and proper.

Respectfully submitted,

REMINGER, CO., LPA

By: /s/ Lyndsay I. Ignasiak
    One of the Attorneys for ALLIANZ GLOBAL
    RISKS US INSURANCE COMPANY

Lyndsay I. Ignasiak
REMINGER, CO., L.P.A.
College Park Plaza
8909 Purdue Road, Suite 200
Indianapolis, Indiana  46268
lignasiak@reminger.com
Tel:  (317) 663-8570

     and

Roderick T. Dunne (*pro hac vice pending*)
Joseph J. Sarmiento, IV (*pro hac vice pending*)
KARBAL, COHEN, ECONOMOU, SILK, & DUNNE, LLC
150 South Wacker Drive, Suite 1700
Chicago, Illinois 60606
rdunne@karballaw.com
jsarmiento@karballaw.com
Tel:  (312) 431-3700